## CITY OF WACO v. TEXAS LIFE INS. CO.
### (No. 6235.)

(Court of Civil Appeals of Texas. Austin.
Nov. 30, 1920. Rehearing Denied
March 3, 1921.)

1. **Appeal and error ⊚⇒909(1)—In determining amount of taxation, reserve fund presumed that defined by statute.**

In the absence of a statement of facts, it must be presumed that the sum found by the trial court, in a suit relative to taxation, as the reserve liabilities of plaintiff domestic insurance company, consisted of *outstanding policies*, which Rev. St. 1911, art. 4764, declares shall constitute the reserve to be deducted from total amount of assets, to determine amount subject to taxation.

2. **Taxation ⊚⇒500—Finding that entire assets amounted to certain sum indicates inclusion of nontaxable assets; "entire."**

The word "entire" in the finding in a suit relative to taxation of a domestic insurance company, that the entire assets of the company amounted to a certain sum, indicates that no sort of assets was excluded, but that nontaxable liberty bonds, in which its capital stock was invested, were included.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Entire.]

3. **Taxation ⊚⇒380—Insurance company owner of land surrendered to it only where its lien was a vendor's lien.**

Within Rev. St. 1911, art. 4764, providing for deduction from remainder of the assets of a domestic insurance company, of the value of real estate owned by it, for determining the taxable value of its personal property, it is the owner of land on which it held vendor's liens, and which the purchaser, unable or unwilling to pay for, surrendered possession of to it; but not of land on which it held some other kind of lien, and which the landowner, failing or being unable to pay the debt secured, surrendered to it; title of the other party being divested by the surrender in the former case, but not in the latter.

Appeal from District Court, McLennan County; Erwin J. Clark, Judge.

Suit by the Texas Life Insurance Company against the City of Waco. Judgment for plaintiff, and defendant appeals. Affirmed.

Street, Willis & Coston and S. H. Clayton, all of Waco, for appellant.

Kyle Vick and J. N. Gallagher, both of Waco, for appellee.

KEY, C. J. The Texas Life Insurance Company brought this suit against the city of Waco, and obtained a judgment, canceling a certain tax assessment, and the latter has appealed. There is no statement of facts, and the case is presented to this court upon the trial court's findings of fact and conclusions of law, which, in so far as material to the appeal, are as follows:

"(3) Shortly after the act of April 24, 1907, took effect, the plaintiff, under and by virtue of the provisions of section 8 of said act (Acts 1907, c. 170), deposited with the treasurer of the state of Texas at Austin, securities covering the entire capital stock of said company, and has continuously from said time, maintained such deposit with said state treasurer, and had on deposit with said treasurer on the 1st day of January, 1918, securities consisting of United States Bonds, commonly called 'Liberty Bonds,' in the sum of $200,000, being the amount of and representing the entire capital stock of said company.

"(4) On the 5th day of October, 1917, at a meeting of the board of directors of the Texas Life Insurance Company duly and legally held, the following resolution was passed: 'On motion of E. M. Ewing, seconded by E. L. Humphries, the president was authorized to invest the entire capital stock of the Texas Life Insurance Company, amounting to ($200,000.00) two hundred thousand dollars, in Liberty Bonds of the United States, and to deposit the same with the state treasurer at Austin, under the capital stock law'—and said investment, under and by virtue of said authority was duly made, and said bonds so purchased and deposited with the treasurer of the state of Texas, at Austin, as aforesaid, and were on deposit with said treasurer on the 1st day of January, 1918.

"(5) On the 1st day of January, 1918, the entire assets of said Texas Life Insurance Company amounted to $1,470,321.45, which was the full actual market value of said assets, and all the same, and the reserve liabilities of said company on said date amounted in the aggregate to $1,185,054.13, which said reserve liability, deducted from the total assets of said company as aforesaid, left the sum of $285,-267.32 as the amount of the aggregate capital stock and surplus funds of said company on said date.

"(6) The city of Waco for the year 1918 assessed all property, real and personal, within said city for the purpose of taxation at an assessed value representing 85 per cent. of its supposed actual market value.

"(7) The plaintiff rendered real property situated in the city of Waco, to the assessor of taxes for said city for the year 1918, which, on said basis of 85 per cent. of its actual market value, was equalized at $80.490, as its full assessable value for taxes for the year 1918.

"(8) The plaintiff, Texas Life Insurance Company, claimed that, its capital stock being invested in bonds of the United States, and deposited with the treasurer of the state at Austin on the 1st day of January, 1918, the amount of the same, to wit, $200,000, should be deducted from the aggregate of $285,267.32 as aforesaid, leaving the sum of $85,267.32 as its remaining property to be considered on the question of taxation in said city, for said year, and the same, at 85 per cent. of its actual value, would amount to $72,477.22, and, as the assessed valuation of said real estate so rendered to the city by said plaintiff for said year amounted to more than said sum, plaintiff did not render any personal property, or credits to said city of Waco for said year.

"(9) The taxing authorities of the city of Waco for said year 1918 entered on the rendi-

tion sheet of plaintiff to said city assessor for said year a new item, as follows: 'Credits, $119,350.00.' The plaintiff, by its president, went before the equalization board, and the city assessor, and protested against said assessments for supposed 'credits' in the sum of aforesaid, as follows:

"'Waco, Texas, August 16, 1918.

"'We, the Texas Life Insurance Company, protest against this assessment for the reason that our capital stock of ($200,000.00) two hundred thousand dollars, is invested in United States Liberty Bonds, which are exempt from taxation and which are now on deposit in the State Treasury at Austin.

"'Texas Life Insurance Company,

"'By John D. Mayfield, President.

"'Protested in the presence of John C. Walton, C. M. Hubby and George D. Fields.'

"The Equalization Board denied the right of plaintiff company to deduct and exclude from its property subject to taxation the said $200,000 Liberty Bonds on deposit with the treasurer of the state at Austin, as aforesaid, and refused to give plaintiff any relief, and refused to extinguish said item of 'credit,' as aforesaid, or to reduce the assessment of the same, refusing the plaintiff the right to deduction for the full amount of its capital stock invested in such nontaxable securities and on deposit at Austin, as aforesaid.

"(10) The tax rate for the city of Waco for the year 1918 was $2 upon the hundred dollars assessed valuation of property, and the taxes on said real estate at said rate was duly entered against plaintiff on the tax rolls of said city for said year, and also the tax on said $119,350 of alleged credits was also entered upon the tax roll of said city against the plaintiff for said year.

"(11) Plaintiff has paid to the city tax collector the full tax so assessed against it, on its said real estate, as aforesaid, but has failed and refused to pay the said tax so assessed against it on said $119,350, of alleged credits, as aforesaid, and has brought this suit to cancel the same and enjoin the collection thereof.

"(12) Of the real estate so rendered by the plaintiff to said city for said year 1918, $26,370 at assessed value was on the 1st day of January, 1918, owned in fee simple by plaintiff and held by record title.

"(13) Of the real estate so rendered by the plaintiff to said city for said year 1918, $9,250 at assessed value was property upon which plaintiff on the ·1st day of January, 1918, held vendor's liens for sums largely in excess of the true value of said property, and which had been abandoned by, or surrendered to, plaintiff by the owners thereof, and plaintiff was in actual possession and control of the same in the enforcement of its rights as unpaid vendor, and the parties owing said amounts were insolvent, and plaintiff had to look solely to said property for reimbursement for its debts.

"(14) In addition to the property so rendered by the plaintiff to the city for taxes for said year 1918, plaintiff owned and held real estate outside of the city of Waco of the assessed value of $13,780, the same not being· taxable in the city of Waco for any purpose.

"(15) In addition to the foregoing the plaintiff, on the 1st day of January, 1918, owned as an investment of its surplus funds $9,000 face value of United States bonds, commonly called 'Liberty Bonds,' and 85 per cent. of the face value of the same amounted to the sum of $7,650.

"(16) The city of Waco and said tax assessor and collector are demanding and claiming against the plaintiff the taxes on the full amount of said assessment of credits, as aforesaid, and will proceed to enforce the collection of the same if not restrained.

"(17) For the real estate so rendered by the plaintiff to said city for the year 1918, $16,380 at assessed value was property upon which plaintiff, on the 1st day of January, 1918, held liens other than vendor's liens for sums largely in excess of the true value of said property, and which has been abandoned by, or surrendered to, the plaintiff by the owners thereof, and plaintiff was in actual possession and control of the same in the enforcement of its rights as unpaid lienholder, and the parties owing said amounts were insolvent, and plaintiff had to look solely to said property for reimbursement for its debts.

"(18) Of the real estate so rendered by plaintiff to said city for the year 1918, $8,790 at assessed value was property upon which plaintiff on the 1st day of January, 1918, held vendor's lien for sums largely in excess of the true value of said property, but of which plaintiff had not acquired actual possession on or prior to said date, but the parties owing said amounts were insolvent, and plaintiff had to look solely to said property for reimbursement for its said debts.

"(19) The indebtedness held by plaintiff and secured by liens on the several properties referred to in paragraphs 13, 17, and 18 of these conclusions of fact were all listed as a part of the assets of said company, at their full face value, together with all accrued interest thereon, and formed a part of the total assets of the company, as hereinbefore found, and were so listed and valued in excess of their actual value, because the parties owing the same were all insolvent, and the properties securing the same insufficient to pay said debts in full.

"(20) The remaining real estate so rendered by plaintiff to said city for said year 1918 was property upon which plaintiff held liens other than vendor's liens, but the possession of which had not been acquired by said plaintiff, on or before January 1, 1918, but the parties owing the amounts so secured were insolvent, and plaintiff had to look solely to said property for reimbursement for its debts.

"(21) The conclusions of fact embodied in the judgment in this cause are here adopted as a part of these conclusions of fact, and if there should be any conflict between these conclusions of fact and said conclusions of fact embodied in said judgment, either real or apparent, the findings of fact embodied in said judgment shall control.

"Conclusions of Law.

"(1) Plaintiff is entitled to deduct the sum of $200,000 from its property which would otherwise be taxable on account of the fact that its capital stock was on the 1st day of January, 1918, invested in United States nontaxable bonds, and deposited in the city of Austin.

"(2) If all of plaintiff's remaining $85,267.23,

representing its surplus fund on the 1st day of January, 1918, had been taxable in the city of Waco, its assessed value at the rate of assessment in said city would have been $72,477.22.

"(3) From the same plaintiff is entitled to the following deductions:

| | |
|---|---:|
| (a) For real estate owned under full title as aforesaid | $26,370 00 |
| (b) For real estate retaken under vendor's liens, as aforesaid | 9,250 00 |
| (c) For real estate outside of the city of Waco, and nontaxable therein | 13,780 00 |
| (d) For nontaxable liberty bonds held as aforesaid | 7,650 00 |
| Total | $57,050 00 |

"(4) Deducting said total from the aforesaid sum of $72,477.22 leaves $15,427.22, which the court holds plaintiff should pay taxes on to the city of Waco for the year 1918, as personal property, or credits, and that the assessment of $119,350, as aforesaid, should be reduced to said sum of $15,427.22, and all of the same in excess of said sum should be canceled.

"(5) The court finds that the taxes due the city on said sum at the rate of $2 per hundred for said year 1918 amounts to $308.54, and that the plaintiff should pay the same to the city, and all of the taxes assessed on said $119,350 assessment of credits, as aforesaid, except said sum of $308.54 should be canceled, and plaintiff should have an injunction against the defendants, and each of them, perpetually enjoining them from collecting any part of said tax except the $308.54, as aforesaid.

"(6) Plaintiff is not entitled to any deduction from its taxable property for said year 1918 on the real estate so rendered by it to the city of Waco for said year upon which it had vendor's liens, but the possession of which had not been acquired by plaintiff on or before said date, nor for the real estate so rendered by it to said city for said year on which it had liens other than vendor's liens, notwithstanding it had actual possession of the same, as hereinbefore found, nor for the real estate so rendered by it to the said city for said year, upon which it had liens other than vendor's liens, but the possession of which had not been acquired by said plaintiff on or before said year."

Counsel for appellant does not deny that the $200,000 worth of United States bonds, owned by appellee, is exempt from taxation, but makes the contention that the trial court deducted the value of the bonds from appellee's assets twice instead of only once; but the record does not sustain that contention. The findings of fact show that on the 1st day of January, 1918, appellee's entire assets amounted to $1,470,321.45, and that its reserve liabilities at the same date amounted in the aggregate to $1,185,054.13, which latter sum, when deducted from the former, left $285,267.32, as the amount of aggregate capital stock and surplus funds of the company on said date. From that sum the trial court deducted $200,000, the value of the bonds referred to, because they are exempt from taxation. The court also made certain other deductions, of which appellant makes no complaint. The course pursued by

the trial court was in strict conformity with article 4764 of the Revised Statutes, which reads as follows:

"Insurance companies incorporated under the laws of this state shall hereafter be required to render for state, county and municipal taxation all of their real estate as other real estate is rendered; and all of the personal property of such insurance companies shall be valued as other property is valued for assessment in this state in the following manner: From the total valuation of its assets shall be deducted the reserve, being the amount of the debts of insurance companies by reason of their outstanding policies in gross, and from the remainder shall be deducted the assessed value of all real estate owned by the company and the remainder shall be the assessed taxable value of its personal property. Home insurance companies shall not be required to pay any occupation or gross receipt tax."

[1, 2] This statute defines the reserve fund of an insurance company as "the amount of the debts of insurance companies by reason of their outstanding policies in gross"; and, in the absence of a statement of facts showing otherwise, it must be presumed that the $1,185,054.13, found by the trial court as the reserve liabilities of the company, consisted of outstanding policies in gross, which the statute declares shall constitute the reserve to be deducted from the total amount of assets, in order to ascertain the amount of property subject to taxation. Nor does the record show that in finding the amount of appellee's assets the trial court did not include the $200,000 worth of bonds merely because they were nontaxable. On the contrary, the court found that the entire assets of the company amounted to $1,470,321.45; and we think the word "entire" indicates that no sort of asset was excluded. This being the case, and the bonds being nontaxable, appellee had the right to have them deducted, as was done by the trial court.

[3] Appellee has filed a cross-assignment, complaining that the court erred in not deducting the value of certain real estate, upon which it had paid taxes, its alleged title consisting of the fact that it held contract liens, other than vendor's liens, upon the property; that the owners of such property were insolvent, and had surrendered possession to appellee.

The statute authorizes deductions from the assets of the value of the real estate owned by the taxpayer, but does not authorize such deduction unless the taxpayer is the owner of the real estate. The facts above recited do not show that appellee was the owner of the real estate referred to, and therefore the trial court ruled correctly in not allowing any credit therefor. That court did allow credit for real estate similarly situated, and upon which appellee held a vendor's lien, but in this state there is quite a difference between a vendor's lien and other character

of liens. When real estate is sold and a vendor's lien reserved to pay the purchase money, the title to the land remains in the vendor until the purchase money is paid; and when the purchaser cannot or will not pay for the land, and surrenders possession thereof to the vendor, the latter is, in law, the owner of the property. But where a different sort of lien is placed upon real estate, title to the same is not divested out of the owner by his failure or inability to pay the debt, and his surrender of the property to the holder of the lien.

No error has been shown, and the judgment is affirmed.

──────────────
⚖=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes